The bill is by the administrator cum testamento annexo of Louise J. Bottier, deceased, for the construction of the nineteenth clause of her will, which reads as follows: *Page 314 
 "Nineteenth. I give, devise and bequeath all the remainder of my estate and effects, whatsoever and wheresoever, both real and personal, to which I may be entitled, or which I may have power to dispose of at my decease, to my executor hereinafter named, in trust, to invest the same and divide the yearly income thereof into three parts, one-third to be paid to the Babies Hospital, one-third to the Home for Crippled Children and one-third to the Home for the Blind of Essex County, New Jersey, said income to be divided and paid over to the legatees semi-annually."
It is contended by the three beneficiaries therein named that as the income of the fund is given to them without limitation as to time, this amounts to a gift of the corpus and that they are, therefore, presently entitled thereto. This the complainant denies and asks the court to rule upon the issue thus raised.
In Passman v. Guarantee Trust and Safe Deposit Co., 57 N.J. Eq. 273,
the rule under which the defendant beneficiaries here claim is laid down that "the bequest of income without limit as to time, or gift over which can operate, is a bequest of principal, if there be no expression of a contrary intent. * * * The same rule applies whether the gift be direct or through the intervention of a trustee." * * * And "the operation of the rule is not defeated because some duty in realizing assets and securing and paying the income is cast upon the trustees." (Italics mine). See, also, Gulick v. Gulick's Executors,27 N.J. Eq. 498; Miers v. Persons, 92 N.J. Eq. 17; Westfield TrustCo. v. Beekman, 97 N.J. Eq. 140; affirmed, 99 N.J. Eq. 435.
In Miers v. Persons, supra, Chancellor Walker, in commenting upon the rule stated in Passman v. Guarantee Trustand Safe Deposit Co., supra, said: "The law disfavors intestacy and endeavors by construction to hold that a testator has disposed of his entire estate" and that the application of the rule "prevents intestacy and harmonizes with the rule against perpetuities."
The law's abhorrence of intestacy early arose out of a desire to protect the heirs of an intestate from the iniquitous practices of the reverend prelates of the church, who, by royal prerogative, took possession of the goods of such intestate *Page 315 
and being "not accountable to any, but to God and themselves, for their conduct," accounted to no one and thus deprived the heir of his inheritance. These practices had their origin in the ancient doctrine of escheat, whereby the king, as parens patria, and afterwards the ordinary, as head of the church and as the king's almoner, became entitled to seize the intestate's goods. The flagrant abuses of this power later occasioned the adoption of the statutes of 31 Edw. III ch. 11 and 21 Hen. VIII ch. 5, which in turn were the origin of the rule of granting administration of an intestate's estates to the widow or next of kin. 2 Bl. 494[*], 496[*].
But the rule stated in the Passman Case is a rule of construction only, not of law, and raises merely a presumption for the guidance of the court, where the testator's intent is not otherwise discoverable and determinable; and like all such rules, is subject to that cardinal rule "that the plain intent of the testator as evinced by the language of his will must prevail, if that intent may be carried into effect without violating some deeper principle of public policy or of statute prohibition." 2Schoul. Wills § 855. In the construction of a will the court must do everything in its power to discover the testator's intentions and to see that they are carried out, if possible.Johnson v. Bowen, 85 N.J. Eq. 76.
Counsel for the defendant Arthur Sunshine Home in his brief concedes that "where the will plainly indicates that the income only is given, the testator's intention would not seem to be the subject of construction." Stated in another way, where the intention of the testator is clear there is no room for construction or speculation.
"Where the intention of the testator to give only the use is clearly manifest and undisputed, the rule must yield to the stronger force of intention; but where it is doubtful whether the use only or the absolute ownership was intended to be given, the rule has been allowed to have a controlling effect." In reOlmstead, 226 N.Y. Supp. 637.
"But notwithstanding as a general rule, the gift of interest and dividends standing by itself is a gift of the corpus, yet if from the nature of the subject, or the context of the will, it *Page 316 
appear that the produce or interest of the fund was only intended for the legatee, the gift of the interest will not pass the principal." 2 Rop. Leg. 1478.
Presumptions based upon a given set of circumstances are designed only to aid the court in construing the language of the will in such manner as will carry out the intention of the testator, the determination of such intention being the ultimate purpose of all rules of construction. And this is the sole object of all judicial interpretation. 2 Schoul. Wills § 859. The predominant idea of the testator's mind, if apparent, is always heeded. 2 Schoul. Wills § 858.
The scheme of the testatrix' will is not, it seems to me, difficult to understand, and her intention is easily discoverable. She was unmarried and had no relatives other than the three cousins named as legatees in her will. She first provided for the payment of her debts, gave pecuniary legacies to each of her three cousins and divided her household effects among them. She also gave some twelve other pecuniary legacies, ranging from $250 to $15,000, each to friends and others, including her church, and apparently to everyone having any vestige of a claim upon her bounty. After thus dividing the bulk of her estate amongst her relatives and friends, she created a trust fund of the residue and left it to her executor as trustee, with the plain intent, as I think, that it should constitute a perpetual fund, the income only of which was to be divided into three parts and paid semiannually to the three charitable institutions mentioned. Who can deny her right to do so? What prompted the act — a desire for a perpetual memorial, insurance against dissipation of the fund by the legatees themselves, or what not — need not concern us. Suffice it to say that her intent is plainly expressed in unequivocal language. That intention having been thus plainly expressed, why should it not be given effect? There is nothing illegal about the trust which she created. It is not in contravention of the rule against perpetuities as the beneficiaries are all charitable institutions. Smith v. Pond,92 N.J. Eq. 211; Y.M.C.A. v. Appleby, 97 N.J. Eq. 95; Trusteesof the First Presbyterian Church v. Wheeler, *Page 317 106 N.J. Eq. 8. An examination of the many decisions of the courts of this state in which the rule here invoked has been applied discloses that the legatees there concerned were either individuals or such beneficiaries as that the non-application of that rule would violate the rule against perpetuities. But because of the character of the defendant beneficiaries and of other provisions of the will, there is no reason for invoking the rule to prevent intestacy; nor, indeed, is there any danger of the purpose of the trust failing, for, under appropriate circumstances, the doctrine of cy pres may be invoked (Nichols v. Newark Hospital, 71 N.J. Eq. 130; Larkin v.Wikoff, 75 N.J. Eq. 462); and the court will not permit the trust to fail for want of a trustee. Weiland v. Townsend,33 N.J. Eq. 393; Smith v. Washington Casualty Insurance Co.,110 N.J. Eq. 122.
In determining the intention of the testatrix the will should be read from its four corners and the provisions of the "twentieth" clause of her will should not be ignored. That clause reads, in part, as follows:
"Twentieth. I hereby authorize and empower my hereinafter named executor and trustee, at his discretion, and whenever in his sound judgment it shall be best and advantageous to myestate, or whenever it may be necessary to raise funds to pay legacies," to sell, convey, mortgage, c. (Italics mine.)
She speaks of a possible advantage to her estate resulting from the exercise of discretionary powers vested in her trustee The only "estate" remaining in the hands of the trustee after the settlement of the executor's account, would be the residue, the trust fund. It is to this estate to which the anticipated advantage refers, not to the legacies payable by the executor, as to which she said "or whenever it may be necessary to raise funds to pay legacies." The same power is given to both executor and trustee, but for different reasons — to one to preserve the estate, and to the other to pay legacies. No "estate" as to which the trustee's discretionary power applies would remain if the defendant's contention were to prevail. The language of this clause of the will, it seems to me, clearly *Page 318 
evinces an intention that the trust created by the preceding paragraph shall be a continuing one, and that the income of the trust fund, and that alone, should be payable to the beneficiaries therein named.
The plain intent of the testatrix being that the fund arising from the proceeds of her residuary estate should be held intact and only the income paid over to the beneficiaries, this court is not warranted in defying her purpose and disregarding her intent by holding the beneficiaries to be presently entitled to payment of the principal of the trust which she created for their benefit. In re Olmstead's Will, supra. To do so would be to make a new will for her, and this the court cannot do. Schoul.Wills 862. I will advise a decree accordingly.